IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN WILLIAM O'QUINN, III, and | ) | Case No. 06-11104 |
| SHERRIE LYN O'QUINN, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | _____ |
| | ) | |
| GARY E. SHEPHARD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: 07-02007 |
| | ) | |
| JOHN O'QUINN | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | _____ |

**MEMORANDUM OPINION**

THIS MATTER came before the Court for hearing on May 24, 2007 upon Defendant's Motion to Dismiss this adversary proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiff's Complaint (the "Complaint") fails to state a claim upon which relief can be granted.[1]  C. Scott Meyers appeared on behalf of Plaintiff Gary E. Shephard ("Shephard") and William E. Brewer, Jr. appeared on behalf of Defendant John O'Quinn ("O'Quinn").

The Complaint challenges the dischargeability, pursuant to Sections 523(a)(4) and (a)(6) of the Bankruptcy Code, of a claim arising from a default judgment entered against O'Quinn by

---

[1] Federal Rule of Bankruptcy Procedure 7012(b) makes Federal Rule of Civil Procedure 12(b)-(h) applicable to adversary proceedings filed in a United States Bankruptcy Court.

1

the United States District Court for the Eastern District of Tennessee. The default judgment was entered due to O'Quinn's failure to respond to, or oppose, the complaint filed by Shephard in that court. The default judgment awarded Shephard a recovery of medical expenses, attorney fees, and costs for O'Quinn's violation of the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and also awarded him statutory penalties pursuant to ERISA, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA").[2]

The Complaint in this adversary proceeding sets forth allegations concerning the facts that gave rise to the default judgment. The Complaint alleges that O'Quinn's actions constitute fraud and/or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. As such, the Complaint alleges that the claim held by Shephard arising from the default judgment is nondischargeable in O'Quinn's bankruptcy pursuant to Section 523(a)(4). The Complaint also alleges that O'Quinn's actions gave rise to a willful and malicious injury to Shephard. As such, the Complaint alleges that the claim held by Shephard is nondischargeable in O'Quinn's bankruptcy pursuant to Section 523(a)(6).

## STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them. Franklin v. Gwinnett County Public Schools, 911 F.2d 617, 619 (11th Cir.

---

[2]The judgment entered against O'Quinn includes $12,199.00 for medical expenses; $16,709.50 for attorney fees; $200.00 for costs; and $90,860.00 in civil penalties, for a total of $119,968.50.

1990), rev'd on other grounds by Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992)(facts of the complaint must be accepted as true and the allegations are to be favorably construed to the pleader). A court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); See In re Servico, 144 B.R. 557 (Bankr. S.D. Fla. 1992)(no complaint should be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief). "As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004); Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc., 699 F. Supp. 1158, 1161 (E.D.N.C. 1988). The plaintiff's allegations are to be construed "liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading." 2 James Wm. Moore et al., Moore's Federal Practice ¶12.34[1][b] (3d ed. 2006).

**FACTS**

I. Allegations in the Complaint

      The pertinent allegations in the Complaint are as follows:[3]

---

[3] The Court does not make any factual findings with respect to the facts alleged in the Complaint, but summarizes them for the purpose of analyzing the sufficiency of the allegations.

a. ERISA Violations[4]

1. O'Quinn was the owner and president of OEI. (Complaint, ¶ 6).

2. Shephard was employed by OEI from November 2002 until August 1, 2003. While he was an employee at OEI, Shepard enjoyed certain benefits, including health and dental insurance. Under the terms of Shephard's employment, he was required to pay a percentage of the insurance premiums, which were deducted from his paycheck, and the balance of the premiums were to be paid by OEI. (Complaint, ¶ 7).

3. On August 1, 2003, Shephard was informed by O'Quinn that he was being temporarily laid off by OEI. O'Quinn informed Shephard that OEI would continue Shephard's health and dental coverage through the month of August 2003.

4. Before the end of his term of employment with OEI, Shephard informed O'Quinn that he was scheduled for knee surgery on August 4, 2003. Shephard underwent knee surgery on August 4, 2003. (Complaint, ¶¶ 9, 10).

5. Shepard's knee surgery was eligible for coverage under the group health insurance plan with OEI, and the doctor, anesthesiologist, hospital, and rehabilitation treatment provider were all approved plan providers. (Complaint, ¶ 10).

6. Shephard received his last paycheck from OEI on August 8, 2003, which covered the pay period ending August 3, 2003. From his gross wages earned during that pay period, a deduction of $59.83 was withheld by OEI and designated on the pay stub as "Health," and a deduction of $8.50 was withheld and designated as "Dental." (Complaint, ¶ 11).

7. In the fall of 2003, Shephard received bills from the hospital and various medical professionals stating that he owed approximately $25,000 in unpaid medical expenses. (Complaint, ¶ 12).

8. In January of 2004, Shephard was informed by a representative of Blue Cross/Blue Shield that his health insurance coverage had lapsed prior to the knee surgery and that his unpaid medical expenses would not be covered. (Complaint, ¶ 13).

---

[4] The Complaint separates the "claim" into two categories. The first category stems from the failure of O'Quinn's company, O'Quinn Enterprises, Inc. ("OEI"), to apply the funds withheld from Shephard's paycheck towards the payment of his insurance premiums. These acts are characterized in the Complaint as "ERISA Violations." The second category stems from OEI's failure to comply with certain obligations that it allegedly owed to Shephard with regard to his rights under ERISA as that Act was amended by COBRA. These acts are characterized as "COBRA Violations." It is helpful to separate them here, as the analysis of the Complaint in the context of the Defendant's Motion to Dismiss is informed by the distinction, as will be shown.

9. The health and dental benefits provided to Shephard from OEI were part of an "employee welfare benefit plan" (the "Plan") within the meaning of ERISA, 29 U.S.C. § 1002(1). (Complaint, ¶ 20).

10. OEI was both the "administrator" and the "plan sponsor" of the Plan within the meaning of ERISA, 29 U.S.C. §§ 1002(16)(A) and 1002(16)(B), respectively. (Complaint, ¶ 21).

11. OEI was a "fiduciary" of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). (Complaint, ¶ 22).

12. O'Quinn was also a "fiduciary" of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). (Complaint, ¶ 23).

13. Shephard was a "participant" of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7). (Complaint, ¶ 25).

14. OEI and O'Quinn failed to apply amounts deducted from Shephard's paycheck toward the Plan insurance premiums, but they represented to Shephard that such amounts were being properly deducted and applied. (Complaint, ¶ 26).

15. OEI and O'Quinn failed to pay OEI's contribution toward Shephard's dental insurance premiums under the Plan. (Complaint, ¶ 27).

16. The failure of OEI and O'Quinn to pay the contributions denied Shephard benefits to which he was entitled and constitute violations of ERISA. As such, these actions were willful and malicious, and constitute fraud and/or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. (Complaint, ¶¶ 28, 29).

17. The Complaint alleges that the claim arising from the ERISA violations should be deemed to be nondischargeable pursuant to Sections 523(a)(4) and/or (a)(6).

b. COBRA Violations

18. ERISA, as amended by COBRA, imposes a statutory duty on a "plan sponsor" to provide continuation coverage identical to that provided to its current employees. (Complaint, ¶ 31).

19. When Shephard was laid off from his employment, he informed O'Quinn that he wanted to exercise his rights under COBRA to purchase continuation of his health insurance. (Complaint, ¶ 32).

20. Prior to being laid off, Shephard was placed on a waiting list for a kneecap transplant. (Complaint, ¶ 39).

21. O'Quinn confirmed that Shephard's health insurance would continue uninterrupted and further stated that he and OEI would pay the cost of Shephard's COBRA insurance as partial compensation for Shephard's lay off. (Complaint, ¶ 33).

22. Neither O'Quinn nor OEI ever properly notified Blue Cross/Blue Shield of Shephard's desire to purchase COBRA coverage nor did either of them pay any monies for COBRA coverage for Shephard. (Complaint, ¶ 34).

23. The failure by O'Quinn and OEI to provide proper notice was a violation of 29 U.S.C. § 1132© and 29 U.S.C. § 1166. (Complaint, ¶ 35).

24. O'Quinn also failed to provide timely responses to Shephard's inquiries into the status of his health insurance, in violation of 29 U.S.C. § 1132©. (Complaint, ¶ 36).

25. Because O'Quinn and OEI falsely assured Shephard that he would have COBRA coverage and falsely assured Shephard that they were paying the premiums, Shephard was not aware until later that he did not have COBRA coverage. (Complaint, ¶ 37).

26. O'Quinn and OEI failed to give proper notice to Shephard of their failure to act, thus violating 29 U.S.C. § 1021(d)(1). (Complaint, ¶ 37).

27. Shephard's health insurance lapsed entirely. Because of this lapse, Shephard could not obtain a certificate of continuous coverage. When he was subsequently placed on his wife's health insurance plan, the complications relating to his knee were deemed to constitute a preexisting condition. (Complaint, ¶ 38).

28. Because Shephard's knee problems had been deemed a preexisting condition by his wife's insurance provider, Shephard found himself without health insurance coverage for his knee. Because he did not have coverage for his knee, Shephard was dropped from the waiting list for the kneecap transplant. (Complaint, ¶ 39).

29. O'Quinn and OEI breached their duties with respect to the Plan by failing to enroll Shephard in COBRA coverage; by failing to pay the promised premiums; and by failing to alert Shephard of their breaches in a timely manner so that he could obtain alternative health insurance without a lapse in coverage. O'Quinn and OEI did not give proper notice of a qualifying event[5] because the verbal notice that was given was not made in good faith but apparently made merely to lull Shephard into believing that his company health insurance policy was still in effect when O'Quinn and OEI knew that it was not. (Complaint, ¶ 41).

30. As a direct and proximate result of the actions of O'Quinn and OEI, Shephard was

---

[5] The Complaint does not define the term "qualifying event" or explain the term's significance.

injured and suffered damages and is entitled to damages under COBRA.  Those actions were willful and malicious, and constitute fraud and/or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. (Complaint, ¶ 42).

31.  The Complaint alleges that the claim arising from the COBRA violations should be deemed to be nondischargeable pursuant to Sections 523(a)(4) and/or (a)(6).

II.  Sufficiency of the Allegations

Taking the allegations in the Complaint as true, the Court must determine whether they state a claim upon which relief may be granted.  In order to do so, it is necessary to consider the alleged ERISA Violations and the alleged COBRA Violations separately.  Further, in considering each one, it is also necessary to probe for a sufficient allegation of facts and law that would support either a cause of action under Section 523(a)(4) or Section 523(a)(6).

    a. ERISA Violations

        (I) Section 523(a)(4)

Shephard's Complaint seeks a determination that the debt arising from O'Quinn's alleged ERISA Violations is a nondischargeable debt pursuant to Section 523(a)(4), which provides that a Chapter 7 discharge does not discharge debts that are the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  Shephard alleges that the acts committed by O'Quinn amount to fraud or defalcation as that term is understood within the context of Section 523(a)(4), while acting in a fiduciary capacity, embezzlement, or larceny.  Leaving aside the acts of embezzlement and larceny, in order for the Court to find that Shephard has stated a claim for which relief may be granted pursuant to Section 523(a)(4), it must be possible for the Court to find, based on the facts alleged in the Complaint, that O'Quinn was acting in a fiduciary capacity.

The question that challenges this Court, and has challenged other courts, is whether ERISA can give rise to the type of fiduciary duty contemplated by Section 523(a)(4).  See Navarre v. Luna (In re Luna), 406 F.3d 1192 (10th Cir. 2005); Hunter v. Philpott, 373 F.3d 873 (8th Cir. 2004); Blyler v. Hemmeter, 242 F.3d 1186 (9th Cir. 2001); Chao v. Johnson (In re Johnson), No. 03-5394, 2007 WL 646376 (S.D. Tex. Feb. 28, 2007); Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci, 351 B.R. 876 (N.D. Ohio 2006); Eavenson v. Ramey, 243 B.R. 160 (N.D. Ga. 1999); Bowman v. Hollander, No. 89-0777, 1992 WL 373172 (N.D. Ohio 1992); Trustees of the Colorado Ironworkers Pension Fund v. Popovich (In re Popovich), 359 B.R. 799 (Bankr. D. Colo. 2006); Chao v. Duncan (In re Duncan), 331 B.R. 70 (Bankr. E.D.N.Y. 2005); Weaver v. Weston (In re Weston), 307 B.R. 340 (Bankr. D.N.H. 2004); Trustees of the Colorado Ironworkers Pension Fund v. Gunter (In re Gunter), 304 B.R. 458 (Bankr. D. Colo. 2003); Mo-Kan Iron Workers Pension Fund v. Engleman (In re Engleman), 271 B.R. 366 (Bankr. W.D. Mo. 2001); In re Coleman, 231 B.R. 393 (Bankr. S.D. Ga. 1999); Harsch v. Eisenberg (In re Eisenberg), 189 B.R. 725 (Bankr. E.D. Wis. 1995); Morgan v. Musgrove (In re Musgrove), 187 B.R. 808 (Bankr. N.D. Ga. 1995); Int'l Bd. Of Elec. Workers, Local Union No. 602 v. Bryant (In re Bryant), 73 B.R. 956 (Bankr. N.D. Tex. 1987); Schrimsher v. Nielsen (In re Nielsen), 53 B.R. 289 (Bankr. N.D. Ala. 1985).  If the Court were to conclude that ERISA can never give rise to such a fiduciary duty, then it would be proper to dismiss the portion of the Complaint seeking a determination of nondischargeability with respect to the debt attributed to the ERISA Violations.

In January of 2005, the Fourth Circuit Court of Appeals explained the parameters of fiduciary status under ERISA in Phelps v. C.T. Enterprises, Inc., 394 F.3d 213 (4th Cir. 2005):

8

> [F]iduciary duty under ERISA is not an all-or-nothing concept: that is, "the inclusion of the phrase 'to the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue."

Id. at 219 (quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), cert. denied, 506 U.S. 1081 (1993)). Happily, just after outlining the duties to be undertaken by a court in determining whether one is acting as a fiduciary under ERISA, the Fourth Circuit gave an example exactly like the ERISA Violations alleged in the Complaint:

> Where, for example, an employer is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA.

Id. (citing Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Va., 867 F. Supp. 398, 405 (E.D. Va. 1994)).[6] Thus, in this case, OEI clearly acted as a fiduciary under ERISA. Further, the Phelps court found that the Chief Operating Officer, the President, and the Controller of the corporate ERISA fiduciary also "became subject to the obligations of a fiduciary under ERISA" when they "made the decision to pay other corporate expenses of [the business], rather than to remit the Employees' own paycheck deductions to the Plan." Id. at 221. Therefore, assuming the truth of the facts alleged in the Complaint, O'Quinn was acting as a fiduciary under ERISA because, as owner and President of OEI, he made the decision to put Shepard's employee deductions to a use other than to pay the insurance premiums. A finding by this Court that O'Quinn acted as a fiduciary under ERISA, however, would not end the inquiry. As noted

---

[6]Paragraph 7 of the Complaint alleges "Plaintiff was required to pay a percentage of the insurance premiums, which were deducted from Plaintiff's paycheck, and the balance of the insurance premiums were to be paid by OEI." O'Quinn admitted this allegation in his Answer.

9

above, it must be determined whether ERISA fiduciary status is in harmony with the judicially developed concept of a fiduciary under Section 523(a)(4) of the Bankruptcy Code.

The term "fiduciary capacity" is not defined in the Bankruptcy Code. In re Hollander, 1992 WL 373172, at *2. "The traditional definition of 'fiduciary' - a relationship involving confidence, trust and good faith, is not sufficient in proving 'fiduciary capacity' under Section 523(a)(4)." Clemens v. Venable (In re Venable), No. 00-06044W, 2002 WL 523908, at *3 (Bankr. M.D.N.C. March 26, 2002)(J. Carruthers)(quoting In re Johnson, 691 F.2d 249, 251 (6th Cir. 1992)).  Rather, "[t]he term 'fiduciary' as used in section 523(a)(4) is restricted to 'the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners.'" Id. (quoting Martel v. Zeitler (In re Zeitler), 213 B.R. 457, 461 (Bankr. E.D.N.C. 1997)(quoting Harmon v. Scott (In re Scott), 203 B.R. 590, 596-97 (Bankr. E.D. Va. 1996) and Sager v. Lewis (In re Lewis), 94 B.R. 406, 410 (Bankr. E.D. Va. 1988))).  Courts generally require the existence of an express or technical trust in order to find Section 523(a)(4) fiduciary status. See In re Duncan, 331 B.R. at 77 (citing Zohlman v. Zoldan (In re Zoldan), 226 B.R. 767, 772-73 (S.D.N.Y. 1998)).  Therefore, it must be determined whether one with fiduciary status under ERISA may also be characterized as a fiduciary under an express or technical trust.

This specific question was answered in the negative by Schrimsher v. Nielson (In re Nielson), 53 B.R. 289 (Bankr. N.D. Ala. 1985).  The Neilson court eloquently stated that "the attempted leap from the statutorially [sic]-prescribed use of the word 'fiduciary' in 'AARHUS' to the undefined meaning of the word in the bankruptcy statute falls short of transposition's rim."

10

Id. at 291.  The Nielson court relied on the well-established rule noted above that nondischargeability under Section 523(a)(4) requires that the fiduciary relationship be "founded on a technical or express trust." Id. at 291 (citing 1 Norton, Bankruptcy Law and Practice § 27.46 (1981)).  According to Nielson, ERISA does not supply such a fiduciary relationship. Likewise, the court in International Brotherhood of Electrical Workers, Local Union No. 602 v. Bryant (In re Bryant), 73 B.R. 956 (Bankr. N.D. Tex. 1987), found that a finding of ERISA fiduciary status "does not raise the employer's status to a fiduciary for bankruptcy discharge purposes."  Id. at 958-59 (citing In re Nielson, 53 B.R. 289).  See also In re Hollander, 1992 WL 373172, at *4 (noting that "courts have held that in the absence of an express trust, a fiduciary obligation to pay severance benefits under ERISA is insufficient to trigger the application of § 523(a)(4)")(citing Nielson and Bryant).

The Ninth Circuit Court of Appeals, in a more analytical opinion than Nielson or Bryant, held to the contrary.  Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186 (9th Cir. 2001).  The Hemmeter court began by noting that "courts have construed 'fiduciary' in the bankruptcy discharge context as including express trusts, but excluding trusts *ex maleficio*, *i.e.*, trusts that arose by operation of law upon a wrongful act." Id. at 1189 (citing Davis v. Aetna Acceptance, 293 U.S. 328, 333 (1934)).  However, the Hemmeter court was willing to acknowledge that a statute may impose a fiduciary relationship upon parties that can give rise to Section 523(a)(4) nondischargeability.  Id. at 1190 (citing Quaif v. Johnson, 4 F.3d 950, 953-54 (11th Cir. 1993)). The court stated:

> In general, a statutory fiduciary is considered a fiduciary for the purposes of § 523(a)(4) if the statute: (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the

11

alleged wrongdoing.

Id. at 1190 (citing Windsor v. Librandi, 183 B.R. 379, 383 (M.D. Pa. 1995)(construing state securities act in § 523(a)(4) context)).  Like the Hemmeter court, this Court also finds that "[t]he trust res is identified by the creation of the plan itself."  Id.  See 29 U.S.C. § 1102.  Similarly, ERISA defines the fiduciary duties of the ERISA fiduciary.  See 29 U.S.C. §§ 1103-1104.[7]  Finally, the fiduciary duties or obligations are put in place at the time that the plan is created, a time which predates any wrongdoing.  Thus, ERISA meets the requirements for establishing a statutory fiduciary falling within the admittedly narrow ambit of Section 523(a)(4).  See also In re Duncan, 331 B.R. at 82; In re Weston, 307 B.R. at 343; Eavenson v. Ramey, 243 B.R. at 165-66; In re Musgrove, 187 B.R. at 814.  Therefore, consistent with cases that take the position that a statute may give rise to Section 523(a)(4) fiduciary status if it meets certain conditions, this Court holds that if the debtor meets the definition of an ERISA fiduciary, then the requirements for a finding of fiduciary status under Section 523(a)(4) will be satisfied.

Luna, cited by O'Quinn for the proposition that ERISA cannot give rise to Section 523(a)(4) nondischargeability, does not actually hold that ERISA cannot give rise to a fiduciary status that will qualify under Section 523(a)(4).[8]  The ultimate holding of Luna was that the defendants in the case did not qualify as fiduciaries under ERISA because, stated simply, they were responsible for making employer contributions (as opposed to administering employee

---

[7]Section 1103 is entitled "Establishment of trust" and provides, inter alia, that "all assets of an employee benefit plan shall be held in trust by one or more trustees."  29 U.S.C. § 1103(a).  Section 1104, entitled "Fiduciary duties," outlines the fiduciary duties of an ERISA fiduciary.

[8]In fact, in footnote 2, the court expressly states: "Given our ultimate disposition of this case, we express no opinion regarding whether fiduciary status under ERISA satisfies § 523(a)(4) of the Bankruptcy Code."  Id.

contributions) to an ERISA employee benefit plan, which responsibility does not, standing alone, give rise to fiduciary status under ERISA.[9]  Because the Luna court made this determination, it was not necessary to decide if the defendants met the definition of fiduciary under Section 523(a)(4).

Hunter, cited by O'Quinn, is more subtle than Luna and raises an interesting wrinkle. Hunter set out to answer the very question at bar: "The question before us is whether an ERISA fiduciary is necessarily also a fiduciary for the purpose of § 523(a)(4)."  373 F.3d at 875.  Hunter, like this case, involved a corporate ERISA fiduciary and the question of dischargeability vis a vis the claim of the ERISA beneficiaries against the principal of the corporate entity.  Id.  The Eighth Circuit began by noting that the Ninth Circuit had previously found "that an ERISA fiduciary is *ipso facto* a fiduciary for the purposes of § 523(a)(4)."  Id. (citing Hemmeter).  The Hunter court also noted, without analysis, that Philpott, the corporate principal, was an ERISA fiduciary.  Id.

---

[9]The Luna court even cited the Fourth Circuit's opinion in Phelps in order to make the point that "[w]here the issue is not *employer* contributions (as here), but rather *employee* contributions held by the employer, courts will recognize that the employer meets ERISA's statutory definition of a fiduciary."  In re Luna, 406 F.3d at 1206 n. 13 (emphasis in original).  As argued by Shepard at the hearing on this matter, this distinction carries much significance.  For example, in In re Popovich, cited by O'Quinn, the court went to great lengths to emphasize (1) that this was indeed the holding of Luna, and (2) that a "critical distinction is made between funds withheld or deducted from employees' paychecks and funds that an employer is contractually obligated to pay to an ERISA plan."  Id. at 806.  Similarly, Hunter v. Philpott, another case cited by O'Quinn, relies upon the fact that the collective bargaining agreement, under which a company was obligated to make employer contributions, "did not include a provision that explicitly required [the company] to hold income earned as a result of the union member's labor in trust for the satisfaction of liabilities owed to the funds."  Id. at 876.  Further, Board of Trustees of the Ohio Carpenters' Pension Fund v. Bucci, on which O'Quinn also relies, holds that the requirement that an employer make contributions does not give rise to the trust relationship necessary for nondischargeability under Section 523(a)(4).  Finally, In re Engleman, also cited by O'Quinn, similarly deals only with an employer's failure to make employer contributions.

The court went on, however, to note that it was "not satisfied that the simple determination [that] an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4)." Id. at 875.

After noting that Philpott was an ERISA fiduciary, the Hunter court characterized Philpott's relationship to the Funds[10] in question as contractual in nature, as opposed to fiduciary. Id. at 877. As support for this position, the court noted that, although the corporation agreed to make payments to the Funds, "Philpott did not sign the agreement or in any way guarantee [the corporation's] performance under the agreement." Id. at 876. Further, "neither [the corporation] nor Philpott was in any position to act solely for the benefit of the Funds, which is a fundamental responsibility of ERISA fiduciaries." Id. (citing 29 U.S.C. § 1104(a)(1) and Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 216 (8th Cir. 1993)). This analysis by the Eighth Circuit actually addresses whether Philpott was indeed an ERISA fiduciary, not whether he was a Section 523(a)(4) fiduciary. See Hunter v. Philpott, 373 F.3d at 876.

The Hunter court went on to hinge its holding on the rule that "[i]n the § 523(a)(4) context, the fiduciary relationship must preexist 'the incident creating the contested debt . . . . It is not enough that the trust relationship spring from the act from which the debt arose.'" Id. at 877 (citing In re Dloogoff, 600 F.2d 166, 168 (8th Cir. 1979), and Davis v. Aetna Acceptance Co., 293 U.S. at 333). Applying this rule, the Eight Circuit noted that Philpott, as the corporate principal, did not incur any debt to the Funds until the alleged wrongdoing. Id. at 877 ("Philpott's debt to the Funds did not preexist the allegedly wrongful act complained of: that is,

---

[10]The Court defined the several ERISA beneficiaries involved in the case collectively as the "Funds"

his failure to hold money to satisfy [the corporation's] owed contributions."). Therefore, "[a]ny possible trust relationship between Philpott and the Funds could only have come into existence when he incurred some individual financial liability to the Funds." Id. As such, "[t]he only possible trust relationship therefore would have sprung from the wrongful act that created the financial liability." Id. This fact, according to the Eighth Circuit, violates "the long-standing rule enunciated by the Supreme Court in *Davis*." Id. Implicit in the opinion is that ERISA simply does not give rise to Section 523(a)(4) fiduciary status.

The Court respectfully disagrees with this analysis. The Eighth Circuit did not analyze ERISA in light of the rule that a statute may create Section 523(a)(4) fiduciary status if it "(1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing." In re Hemmeter, 242 F.3d at 1190. When this analysis is applied, it becomes clear that ERISA, as opposed to the alleged wrongdoing, supplies the necessary trust relationship. This trust relationship, as noted above, is imposed before the alleged wrongdoing, therefore satisfying the rule enunciated in Davis. Lastly, the Hunter court relied on the fact that "Philpott's debt to the Funds did not preexist the allegedly wrongful act complained of . . . ." Hunter v. Philpott, 373 F.3d at 877 (emphasis added). It is the obligations of the fiduciary, however, as opposed to the debt, that must preexist the alleged wrongdoing. In the Section 523(a)(4) context, a context in which one party's claim is grounded in the other's wrongdoing, the debt will always arise at the time of the wrongdoing. This distinction goes to the very heart of the determination of whether there is an express or technical trust.

This Court finds that fiduciary status under ERISA may give rise to the necessary

fiduciary status under Section 523(a)(4) for nondischargeability purposes. As such, the Complaint has stated a claim under Section 523(a)(4) upon which relief may be granted for the ERISA Violations.

### (ii) Section 523(a)(6)

Section 523(a)(6) provides that a debt will not be dischargeable if it is a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As noted by the Fourth Circuit Court of Appeals, "Congress intended a debt to be nondischargeable under § 523(a)(6) only if the underlying <u>injury</u> was a deliberate or intentional one." <u>In re Duncan</u>, 448 F.3d 725, 728 (4th Cir. 2006)(emphasis added)(citing <u>Kawaahau v. Geiger</u>, 523 U.S. 57, 61 (1998)). <u>Geiger</u> made clear that it is the <u>injury</u>, and not the act giving rise to the injury, that must be intended by the debtor in order for the debt arising from that injury to be nondischargeable pursuant to Section 523(a)(6). See <u>Geiger</u>, 523 U.S. at 60-64. In the portion of the Complaint in which Shephard alleges that the ERISA Violations give rise to a claim of nondischargeability under Section 523(a)(6), it is stated: "[O'Quinn's] <u>actions</u> as alleged herein . . . were willful and malicious. . . ." (Complaint, ¶ 29)(emphasis added). As such, the Complaint does not allege that O'Quinn intended any injury by his actions. Therefore, the portion of the Complaint alleging nondischargeability of the debt arising from the ERISA Violations pursuant to Section 523(a)(6) does not state a claim upon which relief may be granted and should be dismissed.

### b. COBRA Violations

#### (I) Section 523(a)(4)

The factual allegations in the Complaint pertaining to the COBRA Violations do not

involve a misappropriation of any funds contributed by Shephard. Rather, the alleged COBRA Violations consist of a failure on the part of OEI and O'Quinn: (1) to enroll Shephard in COBRA coverage; (2) to pay the promised premiums; and (3) to alert Shephard of their breaches in a timely manner so that he could obtain alternative health insurance without a lapse in coverage. (Complaint, ¶ 41). Therefore, reliance on the Fourth Circuit's Phelps opinion for a finding that O'Quinn acted as an ERISA fiduciary with respect to the COBRA Violations is not as convenient as it was for the ERISA Violations.[11] In light of this difference, the Court is mindful of the Fourth Circuit's admonition that a court, when determining whether a party acts as a fiduciary under ERISA, "must ask whether a person is a fiduciary with respect to the particular activity at issue." Phelps v. C.T. Enterprises, Inc., 394 F.3d at 219 (citation omitted). The distinction between the ERISA Violations and the COBRA Violations was not addressed in the briefs filed by the parties. Nor was the distinction addressed at the hearing before this Court. Because the Court has determined that ERISA, as amended by COBRA, may give rise to Section 523(a)(4) fiduciary status, it would be inappropriate to dismiss the portion of the Complaint alleging that the debt arising from the COBRA Violations is nondischargeable pursuant to Section 523(a)(4). The issue at this juncture, after all, is not whether Shephard will ultimately prevail at trial on the merits, but rather is only whether he "is entitled to offer evidence to support the claims." Scheuer v. Rhoses, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). It remains to be seen whether Shephard can demonstrate that O'Quinn acted as an ERISA fiduciary, and thus a Section 523(a)(4) fiduciary, while committing the alleged COBRA Violations.

---

[11] See supra note 9 and accompanying text.

(ii) Section 523(a)(6)

When analyzed pursuant to Section 523(a)(6), the factual allegations with respect to the COBRA Violations suffer from the same infirmity as those with respect to the ERISA Violations. The Complaint states, with respect to the COBRA Violations: "Those actions were willful and malicious. . . ." (Complaint, ¶ 42)(emphasis added).  The Complaint does not allege that O'Quinn intended to injure Shephard with respect to the COBRA violations.  Therefore, the portion of the Complaint alleging nondischargeability of the debt arising from the COBRA Violations pursuant to Section 523(a)(6) does not state a claim upon which relief may be granted and should be dismissed.

## CONCLUSION

The Complaint states a claim upon which relief may be granted with respect to both the ERISA Violations and the COBRA Violations pursuant to Section 523(a)(4).  The Complaint fails to state a claim upon which relief may be granted with respect to the ERISA and COBRA Violations pursuant to Section 523(a)(6).  Therefore, the Motion to Dismiss will be denied in part and granted in part.

This memorandum opinion constitutes the Courts' findings of fact and conclusions of law.  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

## PARTIES IN INTEREST

C. Scott Meyers

William E. Brewer, Jr.

John W. O'Quinn