## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III and | ) | Case No. 06-11104 |
| SHERRIE LYN O'QUINN, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| GARY E. SHEPHARD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 07-02007 |
| v. | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

This matter came before the Court on February 20, 2009 upon the Motion for Summary Judgment filed by Plaintiff Gary E. Shephard, Jr. on November 14, 2008.  At the hearing, C. Scott Myers appeared on behalf of the Plaintiff and William E. Brewer, Jr. appeared on behalf of John W. O'Quinn, III, the above-referenced male debtor.  The Shepard complaint asks the Court to declare the indebtedness owed by O'Quinn to Shepard to be nondischargeable pursuant to Sections 523(a)(4) and (6) of the Bankruptcy Code.  Shephard contends that the default judgment that was entered against O'Quinn in the United States District Court for the Eastern District of Tennessee bars relitigation of the underlying facts and compels summary judgment in his favor.  After consideration of the Motion for Summary Judgment, the arguments of the parties, and the relevant law, the Court will deny the Motion.

**I.  JURISDICTION**

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) which this Court has the jurisdiction to hear and determine.

**II.  BACKGROUND AND PROCEDURAL HISTORY**

The facts are drawn from the pleadings in this case and in the Tennessee action.  They are not in dispute.  From November 2002 until August 1, 2003, Shephard was employed by O'Quinn Enterprises, Inc. ("OEI").  O'Quinn was the owner and president of OEI.  As an employee of OEI, Shephard was eligible to participate in OEI's group heath insurance plan through Blue Cross/Blue Shield of Tennessee.  The cost of the health insurance premium was split between the employer and the employee.  OEI deducted $59.83 per pay period from Shephard's paycheck for his portion of the health insurance premium.

In the summer of 2003, Shephard learned that he needed to have surgery on his left knee. In accordance with the requirements of his insurance plan, Shephard obtained prior approval for the surgery from Blue Cross/Blue Shield and scheduled the surgery for August 4, 2003.  On August 1, 2003, Shephard was laid off due to lack of work.  O'Quinn told Shephard that the layoff was temporary and that his insurance premium was paid for the month after his layoff. O'Quinn assured Shephard that his health insurance would still be effective the following week when he had knee surgery and that OEI would pay his Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") premium for the first two months after his layoff.  On

2

August 4, 2003, Shephard underwent knee surgery.

In the fall of 2003, Shephard received bills from the hospital and various medical professionals stating that he owed approximately $25,000 in unpaid medical expenses. In January of 2004, a representative of Blue Cross/Blue Shield informed Shephard that his health insurance coverage had lapsed prior to the surgery and that his unpaid medical expenses would not be covered. Shephard discovered that for some period of time the amounts that were deducted from his pay were not being applied to his health insurance premium and that he did not have COBRA coverage as promised. The lapse in coverage adversely affected Shephard's ability to obtain new insurance coverage, as his knee problem was considered a preexisting condition. The coverage lapse also placed him last on a transplant list, delaying his ability to obtain complete treatment for his condition. Further, the Shephards began receiving letters and phone calls from collection agencies to recover the costs of surgery and recovery expenses that would have been paid by Blue Cross/Blue Shield if Shephard's insurance coverage had been effective.

On February 5, 2005, Shephard initiated a lawsuit against O'Quinn and OEI (the "Defendants") in the United States District Court for the Eastern District of Tennessee (the "Tennessee Action"). In his complaint, Shephard alleged breach of fiduciary duty, conversion, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. After receiving an extension of time, the Defendants answered the complaint, albeit insufficiently. The Defendants' answers failed to comply with Rule 8(b) of the Federal Rule of Civil Procedure because they stated that each of Shephard's allegations was "not admitted or denied," without any further explanation. On April 12, 2005, the District Court

3

entered an order requiring the Defendants to file amended answers conforming to Rule 8 within

twenty days.  Neither Defendant filed an amended answer.  On May 5, 2005, Shephard moved to

amend his complaint, which was granted on June 2, 2005.  On July 5, 2005, after neither

Defendant filed an answer to the amended complaint, Shephard moved for an entry of default for

"failure to plead or otherwise defend" the action.  The next day, both Defendants filed motions

for leave to file answers, and they also filed their answers to the amended complaint.  While

OEI's answer responded to the new allegations contained in the amended complaint, O'Quinn

filed the same answer as before.  On July 7, 2005, Shephard opposed the Defendants' motions,

and the Defendants filed their reply.  The Defendants also filed a joint response to Shepard's

motion for entry of default.  The District Court denied Shepard's motion for entry of default

inasmuch as the Defendants had already filed answers to the amended complaint.  On August 26,

2005, the Defendants' counsel attended the scheduling conference.  On December 6, 2005,

Shephard filed a second motion for entry of default.  In an affidavit supporting an entry of

default, Shephard's attorney stated that the Defendants had failed to cooperate in discovery, to

produce the Rule 26(a) pleadings, and to cooperate in other respects under the scheduling order

and the Federal Rules of Civil Procedure.  Neither Defendant responded to Shephard's motion.

On January 4, 2006, the District Court entered a show cause order, ordering the Defendants to

explain why a default should not be entered.  Neither Defendant responded to the show cause

order, and the clerk entered a default on February 1, 2006.  On February 2, 2006, Shephard filed

a motion for default judgment.  The District Court then held a hearing to determine damages.

Again, the Defendants did not appear or respond.  On April 26, 2006, the District Court granted

a default judgment, finding the defendants liable to Shephard for $119,968.50.

On September 20, 2006, O'Quinn filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code.  Shephard timely filed this adversary proceeding.  O'Quinn filed a motion to dismiss the adversary proceeding for failure to state a claim upon which relief may be granted, which this Court granted with respect to the ERISA and COBRA violations pursuant to Section 523(a)(6), and denied with respect to the ERISA and COBRA violations pursuant to Section 523(a)(4).  Shephard then filed the Motion for Summary Judgment currently before the Court.  In the Motion, Shephard alleges that the default judgment in the Tennessee Action conclusively established the elements necessary to hold the debt nondischargeable under Section 523(a)(4) as a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

### III.  STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Rule 56 provides that the moving party will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  In considering a motion for summary judgment, a court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).  The moving party has the burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable

inferences must be drawn in favor of the nonmoving party.  Celotex, 477 U.S. at 323.

## IV.  ANALYSIS

Under the doctrine of collateral estoppel, once an issue of fact or law is resolved by the final judgment of a court, then it is conclusively resolved in subsequent actions between the parties.  Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 214 (3rd Cir. 1997); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995).  Thus, "[c]ollateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding."  Hagan v. McNallen (In re McNallen), 62 F.3d 619, 624 (4th Cir. 1995).  The principles of collateral estoppel apply in dischargeability proceedings in bankruptcy court.  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991).  When determining whether to give a prior federal court action preclusive effect based on collateral estoppel, courts apply federal common law principles of collateral estoppel.  Docteroff, 133 F.3d at 214; Shoup v. Bell & Howell Co., 872 F.2d 1178, 1179-80 (4th Cir. 1989); McCart v. Jordana (In re Jordana), 232 B.R. 469, 475 (10th Cir. B.A.P. 1999); Nestorio v. Assocs. Commercial Corp. (In re Nestorio), 250 B.R. 50, 55 (D. Md. 2000).  Under the federal standard, before a party will be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment.  Combs v. Richardson, 838 F.2d 112, 115 (4th Cir. 1988) (citing In the Matter of Ross, 602 F.2d 604, 607-608 (3rd Cir. 1979)); Restatement (Second) of Judgments § 27 (1982).

6

The question before the Court is whether the issues were "actually litigated" in the Tennessee Action.  Ordinarily under federal law, a judgment entered by default will not support the application of collateral estoppel because "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."  Restatement (Second) of Judgments § 27 cmt. e (1982); see Bush, 62 F.3d at 1323; Meyer v. Rigdon, 36 F.3d 1375, 1379 (7th Cir. 1994); M & M Transmissions, Inc. v. Raynor (In re Raynor), 922 F.2d 1146, 1149-50 (4th Cir. 1991);  U.S. v. Gottheiner (In re Gottheiner), 703 F.2d 1136, 1140 (9th Cir. 1983).  The underlying rationale for the general rule is that a party may decide that litigating an issue may cost more than the value of the lawsuit[1] or the forum may be inconvenient.  In essence, a party may choose not to litigate issues for reasons that have nothing to do with the merits of the case. "The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before."  Wright, 187 B.R. at 833-34 (quoting Restatement (Second) of Judgments § 27 cmt. e (1982)).

However, courts in a majority of circuits recognize an exception to the "actually litigated" requirement.[2]  If a party actively participates in litigation prior to the entry of a default

---

[1]"[A] debtor might reasonably suffer default judgments prior to bankruptcy, relying on their presumptive dischargeability.  Only when a creditor holding such a judgment seeks to have that particular debt excepted from discharge will such a debtor have the incentive to mount a defense to the creditor's factual allegations supporting nondischargeability.  Such principles are in harmony with the Restatement's Official Comment e, which recognizes a cost-benefit analysis as one of the 'many reasons why a party may choose not to raise an issue, or to contest an assertion.'"  FTC v. Wright (In re Wright), 187 B.R. 826, 836 (Bankr. D. Conn. 1995).

[2]Some courts have questioned the exception to the general rule.  For example, in Fed. Ins. Co. v. Gilson (In re Gilson), 250 B.R. 226 (Bankr. E.D. Va. 2000), Judge Mayer criticized the exception because the determination of whether a party's participation in a prior action is

judgment, a federal court can apply collateral estoppel and prevent that party from relitigating the issues decided by the judgment.  Docteroff, 133 F.3d at 215; Bush, 62 F.3d at 1324-25; Fed. Deposit Ins. Co. v. Daily (In re Daily), 47 F.3d 365, 368-69 (9th Cir. 1995); Gottheiner, 703 F.2d at 1140; Jordana, 232 B.R. at 477-78; Nestorio, 250 B.R. at 56-57.  These courts reason that when a party actually participated and had a full and fair opportunity to actually litigate the issues in the prior action, but engaged in obstructive conduct resulting in a default judgment, it would be inequitable to reward that conduct by giving the party another opportunity to litigate the same issue in a different forum.  Melnor, Inc. v. Corey (In re Corey), 394 B.R. 519, 527-28 (10th Cir. B.A.P. 2008).

Cases applying the exception to the "actually litigated" requirement typically involve extensive participation, abuse of process, or a combination thereof in the prior proceeding.  See Docteroff, 133 F.3d at 215 (defendant filed an answer, noticed the plaintiff's deposition, engaged several lawyers, filed pleadings with the court, and corresponded with opposing counsel); Bush, 62 F.3d at 1323, 1324-25 (defendant filed an answer and counterclaim, exchanged requests for documents and trial exhibits, but failed to appear at noticed deposition); Daily, 47 F.3d at 368 (defendant actively participated in prior action for two years after stipulating to modify automatic stay in bankruptcy to proceed in RICO action in federal district court); Gottheiner, 703 F.2d at 1140 (defendant defended lawsuit for sixteen months by filing pleadings and by answering and propounding discovery); Corey, 394 B.R. at 528 (defendant obtained the vacation

---

substantial enough to apply the exception is too arbitrary.  "How much obstreperous or bad faith conduct precludes subsequent dischargeability litigation?  Is the standard objective misconduct or subjective intent?"  Id. at 234.  "It is . . . difficult to discern when 'participation' becomes 'substantial participation' and would satisfy an 'actually litigated' requirement."  Id. at 235.

of a default judgment, unsuccessfully challenged the court's jurisdiction over his person, answered the complaint, propounded discovery, responded to discovery, filed a motion to compel discovery, filed a motion to reconsider, and requested that his trial be held before a jury); Jordana, 232 B.R. at 472 ("[D]efendant Jordana has assiduously pursued a policy of obfuscation, refusing to cooperate in discovery and refusing to answer the plaintiff's First Amended Complaint, in spite of repeated warnings by both plaintiff's counsel and this Court."); Nortman v. Smith (In re Smith), 362 B.R. 438, 444 (Bankr. D. Ariz. 2007) (defendant actively participated in prior litigation for over a year by filing responsive pleadings and a third party complaint, and by engaging in mediation and depositions); Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy), 353 B.R. 371, 382 (Bankr. D. Mass. 2006) (defendant hired counsel, filed an answer and affirmative defenses, initially responded to discovery, objected to a preliminary injunction, and then assented to a stipulation regarding the equitable relief); NBA Properties, Inc. v. Moir (In re Moir), 291 B.R. 887, 893 (Bankr. S.D. Ga. 2003) (defendant actively participated in prior action, answered the complaint, filed a counterclaim, and filed discovery requests).  These factors should be taken into consideration in determining whether a party's participation falls under the exception, a determination that is "within the sound discretion of the trial court."  Bush, 62 F.3d at 1325 n.8 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

In Daily, the Federal Deposit Insurance Corporation (the "FDIC") filed a complaint objecting to the dischargeability of a debt in the debtor's bankruptcy case, which was pending in the United States Bankruptcy Court for the District of Hawaii.  47 F.3d at 366.  The FDIC also filed a civil RICO complaint in the United States District Court for the District of Kansas.  Id. The FDIC sought relief from the automatic stay to join the debtor as a defendant in the district

court action, which was granted.  Id.  In the district court action, the FDIC propounded discovery

requests for almost two years before seeking relief under Rule 37.  Id. at 367.  The district court

found that the debtor's failure to provide discovery was "the result of a deliberate, dilatory

course of conduct" and that his "strategy of delay and evasiveness" had "significantly prejudiced

the plaintiffs."  Id.; see Fed. Deposit Ins. Co. v. Renda, 126 F.R.D. 70, 72-73 (D. Kan. 1989).

The district court then sanctioned the debtor by ordering that all allegations of the complaint be

deemed admitted and by entering a default judgment in favor of the FDIC.  Id.  The FDIC then

moved for summary judgment in the bankruptcy case.  Id.

        The Ninth Circuit noted that the judgment in the RICO action was not an ordinary default

judgment in which the debtor decided that the burden of litigation outweighed any benefit and

chose not to appear.  Id. at 368.  Rather, the debtor actively participated, "albeit obstructively,"

for two years before judgment was entered.  The court declared that:

>       A party who deliberately precludes resolution of factual issues through normal
>       adjudicative procedures may be bound, in subsequent, related proceedings
>       involving the same parties and issues, by a prior judicial determination reached
>       without completion of the usual process of adjudication.  In such a case the
>       "actual litigation" requirement may be satisfied by substantial participation in an
>       adversary contest in which the party is afforded a reasonable opportunity to
>       defend himself on the merits but chooses not to do so.

Id.  The court further explained that denying preclusive effect to the prior judgment would

permit the debtor "to delay substantially and perhaps ultimately avoid payment of the debt by

deliberate abuse of the judicial process."  Id. at 369.

        Six months after Daily, the Eleventh Circuit reached a similar result in Bush.  62 F.3d at

1325.  Bush filed an answer and a counterclaim to allegations of fraud in the United States

District Court for the Southern District of Florida.  Id. at 1321.  For several months, the parties

commenced discovery, exchanging requests for documents and trial exhibits.  Id.  However, after

Bush's counsel withdrew and Bush proceeded pro se, he failed to produce trial exhibits, appear

for depositions, and produce documents.  Id.  After failing to appear at a pre-trial conference, the

district court sanctioned Bush by entering a default judgment on the grounds stated in the

complaint.  Id. at 1321-22.  Ten months later, Bush filed a voluntary Chapter 7 bankruptcy

petition.  Id. at 1322.  Balfour filed an adversary complaint to determine dischargeability and a

motion for summary judgment based on the prior default judgment.  Id.  Bush, like the debtor in

Daily, defended the motion for summary judgment on the ground that the issue of fraud had not

been actually litigated.  Id.  The court found that Bush actively participated in the prior action

over a lengthy period of time.  Id. at 1324.  "Subsequently, he engaged in dilatory and

deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a

sanction against him. . . .  Such abuse of the judicial process must not be rewarded by a blind

application of the general rule denying collateral estoppel effect to a default judgment."  Id.

On the other end of the spectrum are cases in which the debtors barely participated, if at

all, in the underlying action.  In Trustees of the Colorado Laborers' Health and Welfare Trust

Fund v. Sukut (In re Sukut), 357 B.R. 840 (Bankr. D. Colo. 2006), the district court entered a

default against the debtor after she failed to respond to the complaint.  At the evidentiary hearing

upon the Trustee's motion for default judgment, the debtor appeared but did not present evidence

or cross-examine witnesses.  Id. at 842.  Before entering final judgment, the district court

scheduled another hearing to afford the debtor another opportunity to participate, yet the debtor

did not appear.  Id. at 843.  The debtor never filed any documents, retained counsel, or

participated in discovery.  Id. at 846.  In the subsequent nondischargeability action in bankruptcy

11

court, the plaintiffs moved for summary judgment on the basis of collateral estoppel.  Id. at 842.

In denying summary judgment, the bankruptcy court found that the debtor did not meaningfully

participate in the prior action in any fashion, let alone in an obstructive manner.  Id. at 846.

Rather, the debtor defaulted at the outset and gave up.  Id.

   In Gilson, a lawsuit was brought in the United States District Court for the Southern

District of New York upon allegations of fraud.  250 B.R. at 230.  Gilson filed an answer

denying the allegations but soon thereafter filed her bankruptcy petition, staying the district court

action.  Id.  Federal Insurance Company ("FIC") then filed a nondischargeability complaint.  Id.

Gilson filed an answer to the nondischargeability complaint but did not respond to discovery.  Id.

FIC filed a motion to compel, which was resolved by terminating the automatic stay to fully

litigate the matter in the district court.  Id.  Gilson did not respond to discovery requests in the

district court action.  Id.  The district court entered default against her as a sanction for failure to

respond to discovery.  Id.  The magistrate judge gave Gilson an opportunity to submit evidence

and respond to FIC's evidence as to damages.  Id. at 231.  Gilson asserted her Fifth Amendment

privilege against self-incrimination.  Id.  Gilson did not object to the report and recommendation

of the magistrate judge, and a default judgment was entered against her.  Id.

   In rejecting the argument that the actually-litigated requirement was met by substantial

participation in the prior litigation, the Gilson court noted the difficulty in discerning when

"participation" becomes "substantial participation" and how much obstreperous or bad faith

conduct precludes subsequent dischargeability litigation because these determinations require an

inquiry into the subjective intent of the debtor.  Id. at 234-35.  "Applying collateral estoppel

based on subjective intent does not necessarily permit the discovery of the truth of the

underlying matter, the alleged nondischargeable debt, particularly where the defendant because of his default is not present." Id. at 235.  While Gilson did retain counsel and answer the complaint, she did not engage in any other significant activity.  Id.  The court concluded that Gilson's conduct did not rise to the level of activity in Daily or Bush.  Id.

Shepard argues that this case is factually similar to Daily, Bush, and other cases with a high degree of defendant participation.  Shephard asserts that, like those cases, O'Quinn was represented by counsel and filed several motions, extending the prior action for over a year before default was entered.  He further argues, that, as the Bush court stated, "[i]t would be fundamentally unfair to force [the plaintiff] to spend time and money preparing the same discovery simply because [the defendant] has determined that he now wishes to defend the allegations of fraud and avoid his judgment debt in bankruptcy court."  62 F.3d at 1325. However, all discovery in this case has ended, so Shepard will not be required to conduct any further discovery.

The degree of participation by O'Quinn in the Tennessee Action[3] was much closer to that in Gilson than to Daily and Bush.  As in Gilson, O'Quinn's participation in the Tennessee Action centered around answering the complaint and the amended complaint.  After the district court deemed O'Quinn's answer insufficient and Shephard filed his amended complaint, O'Quinn moved for leave to file an answer to the amended complaint, responded to Shephard's opposition to that motion, responded to Shephard's motion for entry of default, and filed his amended answer, which was identical to the original answer.  O'Quinn's only other involvement consisted

---

[3]A court determining whether the exception applies in a particular case must review the entire record of the prior proceeding, not just the judgment itself.  Wright, 187 B.R. at 834.

of attending the scheduling conference, through counsel.  He did not respond to any pleadings, motions, or court orders after the scheduling conference.  He did not appear at the default judgment hearing.  While the clerk's entry of default came almost a year after the complaint was filed, O'Quinn's entire involvement in the prior action lasted less than seven months.  Further, the unfairness of engaging in another round of discovery does not exist, as O'Quinn did not participate in any discovery in the Tennessee Action and no further discovery may be conducted in this case.  Also, as in Gilson, and unlike in Daily and Bush, no evidence of dilatory and deliberate obstructive conduct exists.  O'Quinn, through counsel, explained that he needed additional time to investigate the allegations, causing the delay in answering the amended complaint, which the district court accepted.  In sum, O'Quinn "did not otherwise hinder or delay the judicial process" or "create unnecessary hurdles or . . . needless expenses." Gilson, 250 B.R. at 235.

### IV.  CONCLUSION

Based on the facts and circumstances of this case, the Court concludes that the O'Quinn's limited participation and non-obstructive behavior in the Tennessee Action do not support the application of collateral estoppel because substantive issues were not actually litigated. Therefore, Shepard's Motion for Summary Judgment will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III and | ) | Case No. 06-11104 |
| SHERRIE LYN O'QUINN, | ) | |
| | ) | |
| Debtors. | ) | |
| ————————————————— | ) | |
| GARY E. SHEPHARD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 07-02007 |
| v. | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

**PARTIES IN INTEREST**

Gary E. Shephard, Jr.

John Williams O'Quinn, III

William E. Brewer, Jr., Esq.

C. Scott Myers, Esq.

15